May it please the Court. My name is David McDevitt. I represent Juliana Jett with respect to the District Court for the Northern District of Texas's dismissal on summary judgment of her claim under 15 U.S.C. 1681 S-2B against the appellee, whom I will refer to as Homeward. There is essentially one major issue in this case, and the issue is whether or not a furnisher, an information furnisher, typically it's a creditor, has an obligation under the FCRA to know how its responses on an ACDV form, which I'll get into in a moment, how those responses will affect a consumer's report. Now, there are three sub-issues to this that I've outlined in my brief. First issue is, did the District Court err in holding that the standard under this subsection is whether or not the defendant used reasonable procedures? The second issue is whether or not the District Court erred by finding that Ms. Jett had to of abstract duty to know how the ACDV system works. And then the third issue is with respect to the issue of willfulness and whether the District Court erred by granting willfulness, a willful violation was appropriate for a summary judgment dismissal. And I'll address those in turn. I've also provided an additional authority, it's just a section of S-2 that I did not specifically cite to in my brief, and I wanted to have it blown up for you to look at, because I will reference it in a moment. Now, Juliana Jett, her mother fell ill and she fell behind on her credit card payments because she started to make mortgage payments on behalf of her mother. She went through a Chapter 13 plan. The purpose of the plan primarily was to make sure that if the appellee was paid back in full and that she could keep her house. She made timely monthly payments during the pendency of her plan. She paid off the arrearage to the appellee with interest, and she still owns the property today. So it came as a big surprise to her when her credit reports showed that she had a zero balance on the account that her home had been foreclosed on and that the entire obligation had been discharge of bankruptcy. Now, the appellee in this case is arguably the only creditor of hers that was not harmed by her Chapter 13 reorganization, but for some reason, they were reporting her account in a manner that was causing her the most harm on her credit report. Now, Congress passed the FCRA in large part to allow consumers the ability to dispute and ultimately have removed inaccurate derogatory information about them on the consumer reports that are being published by the consumer reporting agencies, primarily Equifax, TransUnion, and Experian to creditors around the country. Now, in passing the FCRA, Congress abrogated state-based torts such as negligence, defamation, and invasion of privacy in favor of this uniform system. So that way, consumers, if they have a problem with consumer reporting, which is a very important aspect of our financial industry, and upon which virtually all creditors rely, and increasingly employers rely upon for hiring decisions, and apartment buildings and landlords rely upon in deciding whether to rent, the purpose is to ensure that the information that is disputed is reported accurately. So by replacing the state-based claims and establishing a federal system, there's a promotion of uniformity and consistency across the industry. The Bureau's report on approximately 210 million Americans around the country, something like 5% of individuals in an FTC study in 2013 who went through the process of disputing were able to remove an inaccurate item of information that caused an increase of a 25-point jump in their score. So this is a very serious issue that affects millions and millions of Americans. To handle the massive amount of data that is required to use this system, the CRAs developed what they call the eOSCAR system. It's a digital system that anybody who reports information to the consumer reporting agencies must tap into, and when there is a dispute, which requires the furnishers, such as the appellee in this case, to do an investigation and then to report the results of those investigations, it uses the eOSCAR system to send that information back and forth. And in the vast, vast, vast majority of cases, all this information is being handled electronically with no human being on the side of the CRAs actually reviewing the results. It just gets generated automatically based on how the system is programmed. So what this opinion of the district court means is the furnishers, who are really the only people involved in looking at the information on these forms and then making corrections, that they don't have an obligation to know what they're filling in and how that has an effect. Now, the reasonable procedures term that the district court mentioned, the district court said that JET has not pointed to any evidence that the alleged inaccuracy was caused by the failure to use reasonable procedures in responding to experienced ACDV requests. Now, reasonable procedures is a standard under ED, which applies to the consumer reporting agencies, Experian, Equifax, and TransUnion. They're required to use reasonable procedures in preparing reports. The Ninth Circuit said in Gorman that the difference between the language used for the CREs with respect to reasonableness was a limitation on their obligation because they stand in a third-party position with respect to consumers. They don't have a direct relationship. They don't know really what's going on with the accounts. They're relying on the furnisher to know what's going on. The use of the term reasonable reinvestigation in subsection I, which also applies to the CREs, is expressing a limitation on the obligation of the CREs to know what is going on with the account. The onus is on the furnisher. So by applying the reasonable procedures standard and holding that Ms. JET had failed to show that reasonable procedures were used, the court erred because there's nothing in section S2B that speaks to reasonable procedures. It doesn't speak to reasonableness at all. You're saying they have to be accurate or else. It has to be accurate or inaccurate. And what happened was they sent down forms that said, right now it says it's a zero balance. Well, the only thing, they gave accurate information. They took the H out of the CII block. They just didn't replace the H. The only thing that they didn't do was replace the H with a different code. That's correct. Under the way the ACDB process works, and it is uniform across all three bureaus, every time you keep the information the same, you leave it blank. If you want to change it, you put in a new value. And then if you want to delete it, you use a delete code. With respect to payment history, it's usually dashes. With respect to this field, it's a Q. On page 1521, excuse me, 1521. The H designation was still technically accurate, wasn't it? I mean, in the sense that she did resolve the back payment through bankruptcy proceedings. So it wasn't inaccurate. No, it was inaccurate. It was inaccurate because the term stands for discharge in bankruptcy. I thought discharge slash resolve in bankruptcy. Well, it says discharge slash completed. Completed. And it was completed in bankruptcy. Well, it was not completed in bankruptcy because a discharge under Chapter 13 only— It wasn't discharged. It was completed. Right? No. It was reaffirmed in bankruptcy. She made all of her payments and she did not discharge any of the obligation. The discharge in Chapter 13 only happens when a plan has been completed. What is completed? What does discharge mean to one thing slash what does completed mean? Completed means discharge. Why did they use two words to mean discharge? Because under Title 11, Chapter 13, a discharge occurs when the plan has been completed. A discharge occurs in a Chapter 7 in a matter of months, but in a Chapter 13, it's a two to five-year plan. And if you fail to make all timeway payments, then your case can be dismissed. And then you have a dismissal code, and that's something different and has a different effect on the underwriting guidelines of Fannie Mae and Freddie Mac with respect to home mortgages in particular. So it's not accurate to say H. That was the whole source of the problem. And the first two disputes that she lodged, she said, should not be showing this as in bankruptcy. On the second two disputes, one from September 2010, it was based on a phone call, meaning Experian had to type into the field where that H is on one of the forms, remove. They told them to remove the code because they have to, they're saying that that's what the consumer- Experian told American Home Mortgage to remove the code. They told American Home Mortgage that the consumer says it should be removed. It says consumer claims, and then under there it says remove. And essentially, the Experian person probably understood what was happening. Why didn't they- that's what is confusing. Experian had information that was in irreconcilable conflict with leaving, with removing the H and not replacing it with something. Why didn't Experian replace it with something? They knew that this creditor reported four different times that the loan was current, what the balance was, not in default. So why didn't Experian do something? Well, Experian was held under the district court's order to have- Ms. Jett had a claim against them and could go to trial on that. That Experian also should have done a more thorough reinvestigation of the dispute because if they had conflicting information, they should have inquired further. But this is an act where both the furnisher and the consumer reporting agency can be jointly liable for an error on somebody's report. Well, the point is that- excuse me- what the credit information generator was supposed to do is give accurate information to Experian, which they did. They took the H out. They deleted the H. They told Experian this is a performing loan. It's still in effect. Here's the balance. No error. So Experian knew the real facts. That's not correct, Your Honor. Experian- I'm sorry- Homeward did not remove the H. In order to remove the H, you must place a Q code. They left it blank, which means- But which was in total conflict with what they did tell them in writing. I mean, the two- they can't both be true. That's right. They can't both be true. So Experian had to know one- something was inaccurate because they both couldn't be true, is your position right? Well, that's true, but Homeward has an obligation to know that if they don't change something and they don't tell them to delete it, it's going to stay there. I mean, that's- Well, they did tell them. They told them that the loan is performing. That's incorrect, Your Honor. They did not tell them that the loan was performing properly because what they told them was that the H should stay there. And in fact, in the deposition, when they ask about this, they say, do you know if there's a code you're supposed to remove? No. And Homeward, in their responsive brief in this case, has said, we didn't report anything inaccurately. It was included in bankruptcy. And just like Your Honor asked about in the beginning, isn't it true that it was discharged in bankruptcy? The answer is no. And that is an issue of fact that Ms. Jett should have been allowed to show to a jury. Did they report it incorrectly? What they sent down was an instruction, in essence, to the bureaus to keep that H there. And there's no question about that that is what the instruction means under this process. So I submit to the court that we cannot allow there to be an opinion that says the furnishers, 30,000 of them around the country, don't need to know what the effect is going to have if they leave that code there. And even if they didn't know what the effect was, then it was an intentional, a purposeful inclusion of the code. And they chose not to delete it. But they chose to say she was, you know, did have a completed discharge bankruptcy, Chapter 13 plan. And that was inaccurate. And I wanted to point the court's attention to 1556 in the Record on Appeal. It is a frequently asked question section that says, what do you do in this very situation? And it says that the proper thing to do is to place a cue code to remove the status. It says that... And that's from the manual? That's from the... Yes, from the... Who promulgates that manual? It's an association organized by the three bureaus plus Inovis, a fourth bureau, which is not as large. And it's a private organization. But by undertaking this ACD process, they voluntarily choose to use this system and therefore are charged with the duty of knowing how it works. All right. Thank you, Mr. McDevitt. You've saved time for rebuttal.  McLean? May it please the Court. My name is Brad McLean. I'm here on behalf of American Home Mortgage Service, Inc. I'll refer to them as American Home, even though Mr. McDevitt referred to them as Homeward. That's their successor entity's name.  Basically, we're here today because Ms. Jett has been unable to refinance her American Home loan. And it's unfortunate that that's the case. But American Home cannot agree with the standards she's trying to propose today for furnishers of information, their duty in response to a reinvestigation request sent by a creditor reporting agency, such as Experian. Basically, she's proposing that if there's any inaccuracy in the credit report itself, that somehow is the furnisher of information's fault. And that's simply not the law. As this Court recognized, and as the Pueblo v. CSC Credit Services case, the FCRA does not impose strict liability for inaccurate credit entries. Thus, the question is not simply whether an inaccuracy exists, but why it exists. And the question then is whether the furnisher followed reasonable procedures in its investigation of the request it received from Experian. Now, there's no question, as Justice Zellwein recognized, that American Home reported that this loan was current with the correct balance to Experian on multiple occasions. But Experian never made those changes to its credit reporting. What about the guide, the manual, clearly says, just deleting the code won't make the change. You've got to put a Q in there. That's correct. And—  And why isn't that a question of fact for a jury? Well, I believe it's not negligence because of the fact that American Home's position is that its reporting was actually correct. It did leave it blank. That means the code wasn't changed. You're correct there. Now, the reason why it was accurate is because, as you noted, the mortgage was included in her bankruptcy. And that bankruptcy was filed in March of 2005, which means that under the FCRA, it could be reported, the creditor could report it as a part of its reporting for a period of seven years. Well, if the H was accurate, why didn't they—why did they take it out? Why did—who—why didn't they not take it out? Why did they take the H out? All right, they had the H in there, and you say that's accurate. But then they took it out and left it blank. They just left it blank, which under the guide means it stays the same. Mrs. Jett actually initiated—this isn't before us today, but Mrs. Jett actually initiated her own kind of dialogue with American Home on the side, asking—I guess inquiring us on the same issue. And American Home responded in a letter to her saying, we reviewed all your records, the servicing platform, all the documents. We believe our reporting of the bankruptcy is correct because the mortgage itself was included in the bankruptcy. Would it have been correct or incorrect to put the code Q there instead of leaving it blank? Your Honor, I'm not a bankruptcy expert, so I can't speak to whether or not the—what the effect of that—what the effect of the bankruptcy would be and how they report it. But the courts that have addressed this issue have said it's not a legal question you need to look to. It's actually a factual inaccuracy. Whether or not this—her plan was technically, you know, reaffirmed or completed or discharged is kind of beside the point. It's the factual point of her—her loan was included in her bankruptcy. And the relevant question— Well, it wasn't discharged in bankruptcy. It was not discharged. It was reaffirmed. I mean, she can— So what does the word completed mean? And what's your record evidence as to what completed? There is no evidence of what that term means. And our pushback would be that's on them to show because the other circuit courts that have addressed this issue have explicitly said the duty is on the consumer to show that the investigation was objectively unreasonable in response to the notice that was sent. So you have to look first at the notice that the CRA sent. And in this case, that's— Well, it's just what—no one—you gave them the right information in the narrative section. We're just down to—aren't we just down to what went in that C, that one little column? Whether you leaving it blank or your client leaving it blank as opposed to putting a Q in. Isn't that all we're fussing over? That's the way I kind of see it. And the reason why—and that's why I think it's—we have to key in on this notice. And that's—that is— Well, I thought they said remove the H. Well, that's—let me—I'll turn—let's turn to that for a second and talk about that. So the notice itself was sent in September of 2010. So this was the third time that she had requested that Experian tell American Home to look at their credit reporting. The first two times, the notice that was sent from Experian to American Home just said, please verify account information. That was it. She didn't just—she didn't contest the indicator code at all. She did say, my loan wasn't foreclosed on, so that part was removed. But she didn't contest the indicator code at all. Now, we get this third request, which is what we're before today on, in September 2010. And all it says is—and there's a little section that says dispute reasons. So that's where Experian tells American Home what the dispute's about and what they're asking American Home to do to correct the dispute. All it says is—and that's on page 2263 of the record—all it says is the consumer disputes amounts. And then it instructs American Home, verify all amounts and correct the account number. That's it. That's all they told American Home. So American Home dutifully investigated it, reported the correct amount of the mortgage, reported it as current. Now, there's this third column kind of sitting over here off to the side that says consumer claims. And all it has is a simple code word that says remove for the indicator code. That's it. There's no basis for the removal, no reason why they should remove it, nothing saying you got this wrong and here's why. And Experian's own representatives testified in his deposition that was as much for Experian's own internal records to remove the code or stop reporting this mortgage if American Home did not respond to the request. Now, interestingly, if you look at the next request that was sent in July of 2011—this will now be the fourth request—that one, Mrs. Jett is not contesting that one here today before the court. But there, Experian actually told American Home what Mrs. Jett was actually contesting. And there, that's on page 2265 of the record. In the dispute reasons section, it explicitly states the consumer is saying the account was reaffirmed or not included in bankruptcy, verify the consumer information indicator, account status, and history. So there you can see the differences between the two notices to American Home. All the circuit courts that have addressed this issue have said you have to look at— Okay, what is the difference between the two? What happened at that point? Did they put a cue in there after that? That one stayed the same. Now— What do you mean that one stayed the same? American Home, once again, kept the age in place because, once again, they then undertook the investigation, and they thought the reporting was accurate. There was still a blank there, or they left the age in place? They left the blank, which means the age stayed in place. But then Experian changed the report after that? No, they kept it with the age in place and still reported the balance of zero. After the fourth request? Yes, ma'am. But you're saying there's something materially different between the third and the fourth? I'm just saying that what we're trying to argue is the duty is on Experian to give American Home notice of what the dispute's about. And American Home, under the circuit law and other circuits, and reading the FCRA as a creditor's responsibilities and the reporting agency's responsibilities, American Home's duty to respond is totally governed by the notice sent by Experian. So what's the difference between the third and fourth notice? The third one, Experian is not giving—arguably not giving American Home any notice that Mrs. Jett is contesting or why she's contesting the— And what about the fourth notice? Does it or does it not? The fourth one, it does say—here's what she's specifically disputing about the indicator check-in. And what does it say? It says, account reaffirmed or not included in bankruptcy, which would trigger—you know, and it says, please verify the consumer information indicator. So it's specifically telling American Home, please check the indicator. The first one necessarily didn't. It said, remove, kind of over here off to the side. What does check the indicator mean? They would then ask—they were drawing American Home's attention to focus on the consumer information indicator. And then there's actually a note then from Mrs. Jett, or presumably from Mrs. Jett, that says, she has documents showing this account is still open. This was never discharged or included in my bankruptcy. I think what we're getting down here to is Mrs. Jett thinks just because she completed her payment plan that somehow American Home can't report her mortgage as being included in her bankruptcy. That's not the law. Under the FCRA, American Home can report it for up to seven years from the time her petition was filed, which this particular issue is within that seven-year period. So therefore, American Home found that its reporting was correct. That's why it never changed the consumer information indicator, left it blank, which means that the current letter stayed in place. So, again, I'm sort of repeating here, but you're telling us that the report was correct? That is American Home's case. All right. And you don't know whether the report would have been correct if a Q had been shown rather than leaving it blank? I think—I mean, there—it would not—I don't think the H is incorrect, and I don't think the Q would have been, you know, more correct or incorrect either. Now, how Experian understood it, that's on, I think, them to flesh out. That's where our disagreement is. We say the system's created by the credit reporting agencies. They promulgate the manuals. What does the manual say? And this is a generic—I mean, in the coding part, it tells you what each code means. That's where you see the H saying— What does the H say? It says discharge slash completed through Chapter 13 bankruptcy. Now, as Mr. McDevitt pointed out— What does Q say? Q says remove, I think. I think it says remove. I don't have it in front of me. That's my recollection. It actually means to remove the previous value. Now, Mr. McDevitt is correct. There is a Q&A at the very back of the, you know, large guide dealing with this issue. But the fact of the matter is, Justice O'Connor, like you pointed out, ultimately, the responsibility is on the reporting agency if they— Well, if this is the industry-wide situation, and one of the frequently asked questions is, if it wasn't discharged in bankruptcy, but it was worked out, does it tell you what code to put in there? The main part of the guide does not. What does the frequently asked questions section say? It does there. It kind of walks through, and it says, if it's a secure debt, I believe it says you can leave the H code in place. If it's a—I'm sorry. If it's an unsecured debt, you can leave the H code in place. If it's a secure debt or real property, and the bankruptcy plan is completed, go ahead, and then she—and the loan is current, to go ahead and put, I think, remove the previous code. Now, there's— Those were the facts here, and your client didn't do that. Yeah. They did not. They left it blank. I mean, that's just the fact—the fact of the matter is they left it blank. But once again, it's not so much the end result of what happened. It's all key to what did Experian tell American Home to do, and that's where all the other circuits have come out of this. It's not—the consumer can't simply say they got it wrong. They have to show two things. They have to show that their investigation was objectively unreasonable in light of the notice given by the Consumer Reporting Agency, and then secondly, they have to show there was an actual inaccuracy. Well, let's go back to the—that's where I get kinked. If the guide says, if you know these facts to be true, you must remove the code, and your people knew that this mortgage had not been discharged in bankruptcy, that it had been worked out, and it was now current. So they knew those facts, and if they looked at the frequently asked questions, they would have known that they had to remove the H. Only if Experian told them that was the nature of her dispute. If they didn't tell— No, they told her—the nature of her dispute was that her loan was not discharged in bankruptcy. It was not—it was current. I understand, Your Honor, but in the actual notice that we're here today on, they didn't tell American Home that. The actual notice, once again, on page 2263 of the record, it says the only dispute reason given is disputes amounts. In other words, the amount of the actual balance of the mortgage, because, once again, Experian was reporting it as zero. And then the instruction to American Home for its investigation was to verify all amounts, which American Home did. Now, there is a column off the third side that does say remove, but the courts have found this generic instruction, like remove, isn't sufficient to give the furnisher of information notice of what exactly the dispute's about, and that they, therefore, are obligated to do just what it says. I mean, they have to have some idea of what the consumer is disputing, especially in a situation like this where you have multiple requests coming in. Unless there's some new information that Experian is giving American Home, they're entitled to rely on their previous reporting. I believe it's the Gorman case out of the Ninth Circuit. There, the court said, Congress could not have intended to place a burden on furnishers continually to reinvestigate a particular transaction without any new information or other reason to doubt the results of the earlier investigation. Every time the consumer disputes, again, the transaction with the CRA, because the investigation was not resolved in her favor, which is what happened here. She didn't like the fact that she couldn't get a refinance because she had bad credit and that her mortgage was included in bankruptcy. And that's unfortunate, but that's the reality of the Chapter 13 bankruptcy process. It affects your credit rating. We all know that. But there's a difference between getting your mortgage current and having your mortgage discharged. I agree, Your Honor. That is true. Like, she still was paying on the mortgage even after she completed her Chapter 13 bankruptcy plan. But once again, it comes back to the critical question, and the other circuits have honed in on this, is that it's the question of, did the credit reporting agency give the furnisher of information sufficient notice of what the dispute was about such that they could address it through the response process? Because otherwise, what you have here is, you know, just like the credit reporting agencies have millions of files that they're reporting on, the furnishers of information have millions of files as well. So we can't just get in a generic request and say, hey, change this. Well, why do you want us to change it? What is she saying is wrong with it? And that's the point of that fourth notice there. You kind of at least get a flavor that Experian, because they messed up the third time, Ms. Jett came back and said, hey, you still are not getting this right. Because ultimately, it's their reporting. They're the ones that are responsible for pushing this out to the public and other creditors relying on it. It's not American Home. How did it come about that a cue was finally put in the column? Well, what happened was Experian just stopped reporting the loan. I don't think a cue ever was put in the column. They just stopped reporting it as of, I believe, the fall of 2011. I think that's right. So American Home never put a cue in the column. It always kept it blank, because in its opinion, its reporting was correct. Now, you can argue legally whether or not that was the case or not, but the standard here is whether or not there was a factual inaccuracy, not a legal inaccuracy. And here, American Home could report her mortgage as included in bankruptcy. Well, that gets down to what discharge slash completed means, doesn't it? Well, that goes, once again, to Experian's understanding of what OMSI's actions were. In this court, the Fifth Circuit has said that ultimately, what happens in these situations, the duty is on the credit reporting agency to know what the answers mean. And if they don't know what they mean, they need to follow up, then, with the furniture information. And that's the Stevenson v. TRW Inc. case, where this court said, in a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers. Well, that doesn't necessarily mean that the information provider is off the hook. I agree, Your Honor. But what happens here, like you noted earlier, if American Home is saying, on the one hand, H code, which means completed slash discharge through bankruptcy, as far as Experian understood it, and then Experian reports a zero balance, well, that's, you know, American Home is reporting a positive balance. The duty is on Experian to go back to American Home and say, what gives? You know, and just to push it back on American Home that we have to know what they're doing. We can't think for them. We don't know what their responses are. They're the ones that are, really, they're the gatekeeper in this process. The consumer comes to them, makes a complaint. They then relay the complaint then to the furnisher of information. And they're the ones, ultimately, to sort this out and make sure that it's reported accurately because they're the ones that are on the hook, ultimately. And in this case, Experian provided faulty notice to American Home. And then, secondly, they didn't follow up with American Home when they got inconsistent reporting, which is what Judge Fitzwater recognized. He said, he actually found that she presented a fact issue on Experian's negligence in their duties. He said they should have gone back to American Home and said, hey, this is inconsistent. You need to clear this up. But as far as American Home, he found that she didn't present any evidence of their procedures and how they actually investigated the dispute, which is what the other circuit courts, like the Ninth Circuit in Gorman, the First Circuit in the Chain case, actually said. The consumer must show some objective that the investigation itself is objectively unreasonable through pointing to the reasonableness of the actual procedures employed by the furnisher of information in its investigation. Just in conclusion, I just want to point out and remind the court, everyone has a role to play in this process. It's the consumer making the notice to the CRA. The CRA then gives notice to the furnisher of information. As the First Circuit noted in the Chain case, the statute is clear that the investigation is directed to the information provided by the CRA, in this case, provided by Experian. If a CRA fails to provide all relevant information, which it's required to do under the statute, it has to give American Home all the information it has about this dispute from Mrs. Jett. Then the consumer's cause of action lies against the CRA, not the furnisher of information, which is exactly what happened here. Here, Mrs. Jett's claim lies with Experian because they failed to give American Home proper notice of her dispute in this September 2010 notice, and secondly, because they failed to follow up then with American Home when American Home arguably gave them inconsistent reporting. Now, Mrs. Jett has settled out with Experian, so she's had her satisfaction from them. But unfortunately for her, the Fair Credit Reporting Act does not provide for liability for American Home just simply because she is unhappy with the result that came out of their investigation. She must show, and the burden is on her, to show that the procedures they used were objectively unreasonable, and secondly, that the inaccuracy that she alleges would have been found in a reasonable investigation. In that case, you have to look back to the notice that Experian provided, and it didn't alert American Home to the exact nature of her dispute over the indicator code. Now, it did, the September 2010 notice, it's, say, removed by the code, but it didn't give American Home any information about what she was disputing about the code other than just remove it. But a creditor is not going to change its reporting just because a consumer wants something removed. They need to know why, and then they can challenge it. And ultimately, Experian has the discretion to remove or to stop reporting something or not. If they think there's inconsistencies, because the statute allows them, if something is incomplete or unverifiable, they don't have to report it. But in this case, they went ahead and reported it anyway, even though there's arguably maybe an inconsistency in how American Home resolved it. Ms. Judd must answer this question. How is American Home's investigation unreasonable? And she has failed to do that before Judge Fitzwater, and that's the question she still has to answer for this court today. For these reasons, we'd ask this court to judge, to affirm Judge Fitzwater's judgment in favor of American Home and the trial court. Thank you. All right. Thank you, Mr. McClain. Mr. McDevitt, you saved time for rebuttal. So, would you address, Mr. McClain has put a lot of emphasis, at least toward the end of his argument, on what he says was a faulty notice from Experian in just using the word remove. And he described the different roles of the three entities. So, can you address that first, please? Yes, Your Honor. It's inaccurate to say that the Home Order did not receive notice of what the dispute was about in the first, second, and second disputes, or particularly to say it's a generic instruction, remove. They pointed to the very specific code, what was supposed to be removed in the third one. And in the fourth one, there was even more information saying, go look at this consumer information code, this CII code, and do something about it. And so, it's not at all true that there was not sufficient notice. And they've doubled down on the argument that this H code was okay to leave there, because even after they got all that information from the fourth dispute, from Experian, they still left it blank, which means to keep it there. So, the fourth notice is in contention. He said it's not, but you say it is. At issue? Well, the way Judge Fitzwater analyzed the case, he stopped it saying that there was any duty. So, we appealed the issue that there's a duty here. And he previously found that there were no actual damages arising from the later dispute. But that doesn't preclude a finding of a willfulness for that particular issue. So, we appealed the issue of the willfulness finding, because it wasn't specifically alluded to in their motion for summary judgment. We appealed the issue of the dispute, or we pointed to that with respect to actual damages in a negligent finding. So, that is absolutely at dispute in this case. Well, if Experian knew enough to, say, remove the code, why do they keep reporting the balance on the mortgage is zero, when three times they've been told what the actual balance was?  They knew that was wrong. They knew that that was the... That's where they had the disconnect. Experian knew that there was a problem, and instead of reporting the actual balance which had been reported, they kept reporting zero. That's right, because the H code means discharge and bankruptcy, and therefore it can only ever be zero. So, they kicked out the balance information because that was unreliable data. The ACDB process is an electronic system. They all depend on it, and they just don't have the resources to look at every single dispute with a fine-tooth comb. Now, we argued that that was unreasonable, and the district court said we'd go to trial on that, but they're not the only parties responsible here. The Fifth Circuit has said that the CRAs must bear some responsibility, meaning in cases like this, they must bear some responsibility, but ultimately the responsibility falls on the furnisher. That was in Stevenson where the court said that, and that's pointing out that in these types of disputes, the issue of responsibility lies primarily with the furnisher to understand it. The notice of what the dispute is about, Apelli said that the notice didn't say what it was about, but that's not true because Ms. Jett put in her section, please stop saying it's in bankruptcy. So, they got notice. The Ninth Circuit said in Gorman that, yes, you have to do a reasonable investigation, saying, yes, that is a necessary condition. There they argued the statute doesn't say we have to do a reasonable investigation. We can just do a sloppy or cursory investigation, and the Fourth Circuit and Johnson and the same defendant actually said, no, there must be some qualitative aspect to it, but that's just showing that that is a necessary condition. That is not an efficient condition under the statute. They did not properly report back the results in this case. The investigation, they knew exactly what was going on there. They didn't do an unreasonable investigation. They failed to properly report the results of that investigation back to the CRAs, and they did that intentionally leaving that H there, and they just didn't know what it means, and they continue to this day not to know what it means. So, had they put the Q in there, that would have deleted the code. That would have made the balance appear properly, and they would have accepted the rest of the case. Where would the information about the bankruptcy appear? Surely they're entitled to report the bankruptcy. Where would that information be reported? They have a section that says the creditor can put comments in it. So, if they wanted to let other creditors know that this had at some point been in a Chapter 13 and that it had been reaffirmed, they could do that in that section. But putting that H code means it's the kiss of death for somebody's account. It basically zeroes it out and says it's completely discharged. So, if the Q code had been in there, the balance would have been appearing. All the other information they put there would have shown up. But after four disputes, they refused to put a Q code in there, and as a result, the information kept on coming back and kept on getting kicked out because that is just so inaccurate under the system that Experian refused to accept it. And for them to say that they didn't know what they were doing with it is belied by the fact that every time they get a form, they see that in response to the previous three forms, they kept on saying $0, and they should have known that there was something up. All right. Thank you, Mr. McDevitt. Your case and all of today's cases...